No. 93-659

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

A.C. WARNACK, Trustee of the
A.C. WARNACK TRUST, and
KENNETH R. McDONALD,

     Plaintiffs and Respondents,

-v-

THE CONEEN FAMILY TRUST; ELK
CANYON ASSOCIATES LIMITED
PARTNERSHIP, a Montana Limited
Partnership, and J. BOWMAN
WILLIAMS,

     Defendants and Appellants.

**FILED**

AUG 16 1994

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Fourteenth Judicial District,
In and for the County of Meagher,
The Honorable Byron L. Robb, Judge presiding.

COUNSEL OF RECORD:

    For Appellants:

        Perry J. Moore & Cindy E. Younkin, Moore, O'Connell
& Refling, Bozeman, Montana (Elk Canyon Ranch Assoc.
& J. Bowman Williams); Patrick F. Hooks, Townsend,
Montana (The Coneen Family Trust)

    For Respondents:

        John V. Potter, Jr. White Sulphur Springs, Montana

Submitted on Briefs:  June 24, 1994

Decided:  August 16, 1994

Filed:

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

This is an appeal from the findings of fact, conclusions of law, judgment and injunction order of the Fourteenth Judicial District Court, Meagher County, which, following a bench trial, awarded Respondents Warnack and McDonald, as well as nonparty Melvin E. (Bud) Dawson, an easement for various purposes over, across and through the lands owned by the Appellants. We reverse and remand for further proceedings consistent with this opinion.

The following issues are raised on appeal:

1. Did the District Court err in granting a prescriptive easement to a nonparty?

2. Did the District Court err in granting a prescriptive easement to the Plaintiffs/Respondents?

3. Was the prescriptive easement granted overbroad?

Respondents Warnack and McDonald (Respondents) brought this action, claiming a prescriptive easement over a road which runs through the lands of Appellants Coneen, Elk Canyon and Williams (Appellants). The District Court, following a bench trial on March 22 and 23, 1993, concluded that the Respondents did, indeed, have a prescriptive easement over the road which runs "from the end of a county road westerly across state school section 36, then northwesterly over defendants Elk Canyon, Williams and Coneen to the south edge of plaintiffs' premises, then continues northwesterly across Warnack and another area of Coneen to Bud Dawson's land in the Tenderfoot." The District Court also described an alternate route over which the Respondents also

2

claimed a prescriptive easement. The dispute over this latter route was resolved over the course of this litigation and is no longer in contention.

The District Court found that there was a prescriptive easement because the origin of the use of the road remained "unexplained." The court stated:

> The primary easement claimed by plaintiffs is a clearly defined and visible roadway which several witnesses stated they had no trouble following, was improved over the years for vehicles by Doggetts with heavy equipment long before Coneen came, was in use well before the memory of any living witness, and the origins of that use (whether permissive or adverse) remains unexplained.

The court further concluded that unexplained use for longer than the statutory period gave rise to a presumption that the use of the road was under a claim of right and adverse to the owners of the land upon which the route was located. Moreover, the court found that the Appellants acquiesced in the use of the primary easement by the Respondents. Finally, the court found that the appropriate uses of the primary easement included:

> ...use without obstruction [of] the primary access road by all ordinary modern means for purposes of access to their lands, construction of residences and outbuildings, all agricultural purposes, including timber management and logging, and hunting, fishing, camping and recreation.

From the above findings, conclusions, judgment and order, Appellants appeal.

### STANDARD OF REVIEW

Our standard of review for conclusions of law by a district court is whether the tribunal's interpretation of the law is

3

correct. Public Lands Access v. Boone and Crockett (1993), 259 Mont. 279, 283, 856 P.2d 525, 527. Having concluded that the District Court erred in its application of the law to this prescriptive easement case, we decline to address the factual record established at trial and, instead, remand to the District Court for reconsideration of its decision in light of the legal principles set forth in this opinion.

## 1. NONPARTY EASEMENT

Appellants contend that the District Court erred in granting an easement to Melvin E. (Bud) Dawson because Dawson was not a party to the instant litigation. The Respondents merely state that the finding of a prescriptive easement for the nonparty Dawson was supported by uncontradicted evidence and that the road in question provides the only access to the Dawson place.

Dawson was not a party to this action, although he did testify at the trial and does live within the general area served by the roadway at issue. Further, Dawson stated that he generally uses a different road, a logging road, to access his property. Thus, in the present case, Dawson, a nonparty, was awarded an easement that he will likely not even use.

Because he is not a party to the action, Dawson cannot be a party to the judgment. In Moore v. Capitol Gas Corporation (1945), 117 Mont. 148, 156, 158 P.2d 302, 306, we stated:

> [I]t is a fundamental principle of our jurisprudence that it is only against a party to the action that a judgment can be taken and that the judgment is not binding against a stranger to the action.

The same rule pertains where judgment is awarded in favor of a

4

nonparty.  <u>See</u>, 46 Am. Jur. 2d <u>Judgments</u>, § 86 at page 373. Accordingly, we reverse that part of the District Court's judgment and order which grants a prescriptive easement to Melvin (Bud) Dawson.

## 2. EASEMENT TO THE RESPONDENTS

Appellants also contend that the District Court erred in granting a prescriptive easement to the Respondents based on the "unexplained" use of the roadway for more than the statutory period.  Appellants argue that if a party can be deemed to have acquired a prescriptive easement merely because the use of the roadway is "unexplained," then the party "wins" without proof of any of the elements necessary to establish prescriptive use.  The Respondents counter that Montana law makes it clear that when "through the passage of time and beyond the recollection of living witnesses it becomes impossible to determine whether the initial use of a roadway was permissive or adverse under claim of right, the law will presume that initial use was adverse."  We agree with Appellants.

In Montana the general rule as to the establishment of a prescriptive easement is well settled:

> To establish an easement by prescription, the party claiming an easement "must show open, notorious, exclusive, adverse, continuous and uninterrupted use of the easement claimed for the full statutory period..." The burden is on the party seeking to establish the prescriptive easement. "All elements must be proved in a case such as this because 'one who has legal title should not be forced to give up what is rightfully his without the opportunity to know that his title is in jeopardy and that he can fight for it.'"

<u>Boone and Crockett</u>, 856 P.2d at 527.  (Citations omitted.)  "To be

adverse, the use of the alleged easement must be exercised under a claim of right and not as a mere privilege or license revocable at the pleasure of the owner of the land; such claim must be known to and acquiesced in by, the owner of the land." Keebler v. Harding (1991), 247 Mont. 518, 521, 807 P.2d 1354, 1356-1357. (Citation omitted.) "If the owner shows permissive use, no easement can be acquired since the theory of prescriptive easement is based on adverse use." Rathbun v. Robson (1983), 203 Mont. 319, 322, 661 P.2d 850, 852. (Citation omitted.)

It is axiomatic that it is the function of the district court, and not of this Court to hear the testimony, to resolve conflicts in the evidence, to judge the credibility of the witnesses and to determine the facts. According to the District Court, this case involved "... a grab bag of testimony, [mostly imprecise and relating to events and conversations of 10-50 years ago] so there was something for every attorney ..." Our concern here, however, is not so much with what testimony or with which witnesses the court believed, as with the legal principles the court applied to the evidentiary record in reaching its decision.

While the District Court concluded, as an aside, that Respondents had proven the elements of adverse possession as described above, it is equally clear that bearing heavily, if not primarily, in the court's rationale that Respondents were entitled to a prescriptive easement over Appellants' lands, was the proposition that a presumption of claim of right and adverse use arises by a long, continued "unexplained" use of the claimed

6

easement for more than the statutory period and that such presumption relieves the easement claimant of proving the elements of prescription. As the court put it:

> By reason of ... long continued unexplained use of the primary easement for much longer than the ... statutory period ... there arises a legal presumption that the road use was under a claim of right and adverse to the respective people whose lands it crossed. This is sufficient to establish title to the easement by presumption of a grant if not overcome by a preponderance of evidence that the use was permissive ... Finding of Fact No. 17.

\* \* \* \*

> Where plaintiffs have established a presumption of adverse use of the primary easement by long unexplained use as aforementioned, it is not necessary that they prove all of the elements of adverse possession that would otherwise be necessary. However, plaintiffs have done so anyway ... . Finding of Fact No. 42.

\* \* \* \*

> Plaintiffs ... have proven they are entitled to a prescriptive road easement along the primary route ... because of long continued unexplained use for over 70 years ... Conclusion of Law B.

\* \* \* \*

> After plaintiffs established the presumption of adverse use by long continuous unexplained use for more than the ... statutory period ... it was not necessary for plaintiffs to also prove other elements of adverse possession, but plaintiffs did so ... Conclusion of Law D.

This notion -- that a presumption of claim of right and adverse use arises by long, continued "unexplained" use -- so permeates the District Court's findings of fact and conclusions of law that we are unable to determine what decision the court might have otherwise come to on the evidentiary record, had it not so heavily relied on that proposition -- a proposition which, as we

7

will hereafter point out, is without legal foundation and is erroneous.

In fairness to the District Court, that it utilized the concept of "unexplained" use is understandable given the inadvertent and improper injection of that term into Montana case law by virtue of one of our prior decisions and by reason of the subsequent incorporation of that proposition, as dicta, in other prescriptive easement cases.

The term "unexplained" use first appears in Montana's prescriptive easement case law as dicta in Scott v. Weinheimer (1962), 140 Mont 554, 374 P.2d 91. In that case, after reciting the general rule that a prescriptive easement is established by a claimant showing " ... open, notorious, exclusive, adverse, continuous and uninterrupted use of the easement claimed for the full statutory period ...", the Court then goes on to make the following statement:

> If there has been the use of an alleged easement for ten years (or five years subsequent to the 1953 amendment referred to above), <u>unexplained</u>, it will be presumed to be under a claim of right, and adverse, and will be sufficient to establish a title by prescription and to authorize the presumption of a grant. (Emphasis added).

Scott, 374 P.2d at 95.

As authority for that statement, we cited Te Selle v. Storey (1957), 133 Mont. 1, 319 P.2d 218. However, as will be pointed out later in this opinion, our decision in Te Selle never mentioned the phrase "unexplained use," nor was that case decided by utilizing that concept.

Importantly, <u>Scott</u> was not decided by application of the

8

concept of "unexplained" use, but rather on the basis of the well settled general rule that in order to establish an easement, the party claiming such right must show open, notorious, exclusive, adverse, continuous and uninterrupted use of the easement for the full statutory period.

The testimony by the plaintiff in Scott was to the effect that he traveled over the road in question without permission, that he felt he had a legal right to do so, and that he maintained the road. He also stated that he and his predecessors had used the road for over 45 years and that it was the only access to his land and buildings. Scott, 374 P.2d at 94. The defendant's predecessor in interest testified that the road was continuously used by the plaintiff and his predecessors; that he never objected to their use of the road; and that the plaintiffs never asked for permission to travel the road nor was permission ever granted to use the road. We concluded that this testimony, in and of itself, "establishe[d] the fact that the use by the plaintiffs and their predecessors in interest of the road in question was adverse and without license or permission." Scott, 374 P.2d at 95. This statement appears as our conclusion that the elements necessary to prove a prescriptive easement were established.

However, after referring to the fact that the plaintiffs and their predecessor in interest used the road for 35 years before the defendants became the owners of their land, we also stated that, "[t]his use, unexplained, raises a presumption that it was adverse, and under a claim of right." Scott, 374 P.2d at 95. (Emphasis

9

added).

The confusion created by the Scott opinion stems from the fact that, although this Court stated that the use of the road was unexplained and that there was no proof that the use was continuous and uninterrupted, the testimony of the defendant's predecessor in interest clearly demonstrated that the use of the road was "open, notorious, exclusive, adverse, continuous and uninterrupted" for the full statutory period. Boone and Crockett, 856 P.2d at 527.

Moreover, the testimony of the plaintiff also demonstrated his use of the road was without permission, under a belief that he had a legal right to traverse the road, and that it was the only means of egress and ingress to his land. The dicta regarding "unexplained" use of the claimed easement was not pertinent to the final disposition of Scott as adverse possession was clearly established by the evidence and on the basis of the general rule.

Furthermore, there was no legal precedent for the inclusion of the unexplained use concept in Scott. As mentioned above, Scott cited Te Selle for the proposition that unexplained use of a claimed easement will give rise to a presumption that the use of the easement was adverse. However, a careful reading of Te Selle, an easement case pertaining to the use of a water ditch and water pipeline, demonstrates that nowhere in that opinion does the phrase "unexplained use" appear nor is that proposition in any way discussed.

Te Selle does refer to the unmolested use of a claimed easement. Our opinion recites the rule that "where claimant had

shown open, visible, continuous and <u>unmolested</u> use for the statutory period, such use will be presumed to be under a claim of right, and not by license." <u>Te Selle</u>, 319 P.2d at 220. (Emphasis added). The trial court in <u>Te Selle</u> found that the defendant, his grantors and predecessors in interest had "been in open, visible, continuous and <u>unmolested</u> use of a right of way easement to flow 250 inches...of water." <u>Te Selle</u>, 319 P.2d at 219. (Emphasis added). The defendant testified that no one had molested him in his use of the water from the ditch or draw for over 20 years. <u>Te Selle</u>, 319 P.2d at 220. This Court affirmed the district court, stating that "[t]he evidence was ample to sustain the finding of the trial court that defendant had acquired title to the easement by prescription." <u>Te Selle</u>, 319 P.2d at 221.

Accordingly, <u>Te Selle</u> was concerned with the "unmolested" use of a claimed easement, not the "unexplained" use. Unmolested use is not the same thing as unexplained use. In fact, in the context of the general rule and the numerous cases that cite the general rule, it is clear that unmolested use and uninterrupted use refer to the same element of prescription. "Uninterrupted" means "use not interrupted by the act of the owner of the land or by voluntary abandonment by the party claiming the right." Downing v. Grover (1989), 237 Mont. 172, 176, 772 P.2d 850, 852. On the other hand, a use which is "unexplained" is simply a use, the origin or continuation of which is undecipherable, unknown or is, otherwise, without an articulable reason or justification. "Unexplained" cannot be substituted for "unmolested" or "uninterrupted" in the

11

elements of the general rule.

Respondents cite Thomas v. Barnum (1984), 211 Mont. 137, 684 P.2d 1106, and Glantz v. Gabel (1922), 66 Mont. 134, 212 P. 858, in support of the District Court's conclusion that a presumption of adverse possession arises from long, continuous unexplained use. Neither of those cases serve as authority for that proposition, however.

There is no mention whatsoever of unexplained use in Glantz. That case refers to unmolested use of an easement. Glantz recites and applies the general rule:

> Where the claimant has shown an open, visible, continuous, and unmolested use of the land of another for the period of time sufficient to acquire title by adverse possession, the use will be presumed to be under a claim of right, and not by license of the owner. In order to overcome this presumption, thereby saving his title from the encumbrance of an easement, the burden is upon the owner to show that the use was permissive. This rule is sustained by the great weight of authority.

Glantz, 212 P. at 860. (Citations omitted.) (Emphasis added.)

Moreover, the only presumption discussed in Glantz is the presumption of adverse use which arises from proof of all of the elements of prescription required by the general rule. Immediately following the statement of the general rule quoted above, the Glantz court goes on to explain that presumption as follows:

> This is a rule of repose. As said by Mr. Justice Story, in Richard v. Williams, supra:
>
> "Presumptions of this nature are adopted from the general infirmity of human nature, the difficulty of preserving muniments of title, and the public policy of supporting long and uninterrupted possessions. They are founded upon the consideration, that the facts are such as could not, according to the ordinary course of human affairs, occur, unless there was a transmutation of title

12

to, or an admission of an existing adverse title in, the party in possession."

When the claimant's use has thus been open, visible, continuous, unmolested, and under a claim of right, the corollary is that it has been adverse to the owner. ...

Glantz, 212 P. at 860. (Citations omitted.)

Glantz does not state that a presumption arises from "unexplained" use. Accordingly, Glantz is not properly cited for the proposition that unexplained use of a claimed easement gives rise to a presumption of claim of right and adverse use.

Thomas, on the other hand, does refer to "unexplained" use. However, like Scott, it does so only after first reciting the general rule (quoted from Taylor v. Petranek (1977), 173 Mont. 433, 568 P.2d 120), that a prescriptive easement is established by the claimant showing open, notorious, exclusive, adverse, continuous and uninterrupted use of the easement for the full statutory period. Thomas, 684 P.2d at 1110. Thomas then continues with the following statement:

"To be adverse, the use must be exercised under a claim of right and not as a mere privilege or license revocable at the pleasure of the owner of the land; such claim must be known to, and acquiesced in by, the owners of the land. White v. Kamps [119 Mont. 102, 171 P.2d 343]. If there has been use of an alleged easement for the full statutory period, unexplained, it will be presumed to be under a claim of right, and adverse, and will be sufficient to establish a title by presumption of a grant. Scott v. Weinheimer, supra; Te Selle v. Storey, 133 Mont. 1, 319 P.2d 218; Glantz v. Gabel, 66 Mont 134, 141, 212 P.2d 858. This presumption exists to overcome ' "* * * the general infirmity of human nature, the difficulty of preserving the muniments of title * * *"' and to promote public policy of supporting long and uninterrupted possessions..." (Citing Glantz) (Emphasis in quote from Thomas.)

13

<u>Thomas</u>, 684 P.2d at 1110.

While the <u>Thomas</u> court correctly quotes the dicta referring to "unexplained" use from <u>Scott</u>, as pointed out above, the use of the word "unexplained" in that case was without precedent, inadvertent and had nothing to do with the facts or disposition of that case. Similarly, the <u>Thomas</u> quote's citations to <u>Te Selle</u> and <u>Glantz</u> are improper as neither of those cases even refer to the concept of "unexplained" use. Finally, as the actual passages from <u>Glantz</u> quoted earlier in this opinion clearly demonstrate, the "presumption" referred to in the quote from <u>Thomas</u> refers, not to a presumption of adverse use from "unexplained" use as <u>Thomas</u> leads the reader to believe, but, rather, to a presumption of adverse use which arises from proof of all of the elements of prescription under the general rule. <u>Glantz</u>, 212 P. at 860. Under the circumstances, the above passage from <u>Thomas</u> cannot stand as authority for the proposition that a presumption of claim of right and adverse use arises from "unexplained" use.

That passage from <u>Thomas</u> aside, a review of our decision, nevertheless, demonstrates that there actually was no issue as to an unexplained use of the claimed easement in that case. We concluded that "[t]he testimony of Thomas, Meuli and Wilhelm supports the trial court's finding that use of the road was open, notorious, exclusive, adverse, continuous and uninterrupted for all the years leading up to the current dispute." <u>Thomas</u>, 684 P.2d at 1110. The opinion also states that permission to use the road was never sought and that Barnum, himself, "personally acquiesced in

14

the use of the road by area residents who believed they could travel it under a claim of right." Thomas, 684 P.2d at 1110. Accordingly, there was ample evidence in Thomas that the use of the road was adverse, not unexplained, and that all elements necessary to establish a prescriptive easement under the general rule had been proven. Thomas, therefore, provides no authority for the proposition that an unexplained use of a claimed easement gives rise to a presumption of adverse use.

Similarly, a review of easement cases decided since Scott which have either cited Scott or have referred to the concept of unexplained use as giving rise to a presumption of claim of right and adverse use, reveals that any mention of unexplained use was, in actuality, superfluous to the final disposition of the prescription issue. In each case, there was sufficient evidence to prove either adverse or permissive use of the claimed easements in question under the general rule. See, Lunceford v. Trenk (1974), 163 Mont. 504, 518 P.2d 266; Harland v. Anderson (1976), 169 Mont. 447, 548 P.2d 613; Taylor v. Petranek (1977), 173 Mont. 433, 568 P.2d 120; Yecny v. Day (1977), 174 Mont. 442, 571 P.2d 386; Hayden v. Snowden (1978), 176 Mont. 169, 576 P.2d 1115; Johnson v. McMillan (1989), 238 Mont. 393, 778 P.2d 395; Granite County v. Komberec (1990), 245 Mont. 252, 800 P.2d 166; Murray v. Countryman Creek Ranch (1992), 254 Mont. 432, 838 P.2d 431.

Finally, the establishment of a prescriptive easement by "unexplained" use is without sound legal basis in any event. It is fundamental that in order to establish a prescriptive easement, the

15

claimant "<u>must show</u> open, notorious, exclusive, adverse, continuous and uninterrupted use of the easement claimed for the full statutory period." <u>Boone and Crockett</u>, 856 P.2d at 527. (Emphasis added.) An easement established by "unexplained" use does <u>not</u> fulfill the requirement that the easement claimant bear the burden of <u>proving</u> the elements of prescription -- i.e. open, notorious, exclusive, adverse, continuous and uninterrupted use of the easement for the full statutory period.

"To be adverse, the use of the alleged easement <u>must be exercised</u> under a claim of right and not as a mere privilege or license revocable at the pleasure of the owner of the land; such claim must be known to, and acquiesced in by, the owner of the land." <u>Keebler</u>, 807 P.2d at 1356-1357. (Emphasis added.) A use "unexplained" is, in fact, the antithesis of the rule requiring proof of the elements of prescription. In effect, by proving nothing, the claimant proves everything.

Moreover, if the use of the easement is truly "unexplained," there is no way in which the court can determine the character and scope of the easement during the prescriptive period so as to apply the rule, referred to in our discussion of Issue 3, that the use of the roadway cannot exceed the use which the easement claimants made of it during the prescriptive period. <u>See</u> also, State v. Portmann, (1967), 149 Mont. 91, 96, 423 P.2d 56, 58: "[R]ights acquired by adverse use can never exceed the greatest use made of the land for the full prescriptive period."

We can only surmise that <u>Scott</u> inadvertently misquoted <u>Te</u>

16

<u>Selle</u> by substituting the word "unexplained" for "unmolested" and, in so doing, created the legal error, perpetuated in subsequent cases, which we now find necessary to correct. We hold that a prescriptive easement cannot be established through "unexplained" use of the road or trail in question; the requisite elements for establishing a prescriptive easement must be proved by the claimant -- i.e. that the use is an open, notorious, exclusive, adverse, continuous and uninterrupted (unmolested) use of the easement claimed for the full statutory period. Each of those elements is a term of art, defined in our prior cases. <u>See</u>, Rappold v. Durocher (1993), 257 Mont. 329, 332, 849 P.2d 1017, 1019.

The fact that the origin and early use of the road or trail may be lost in history or is beyond the recollection of witnesses, does not negate the obligation of the easement claimant to prove the elements of prescription. In this regard it should be remembered that the claimant need only prove the elements of prescription for the full <u>statutory</u> period, not for the entire existence of the roadway or trail at issue.

Moreover, our decision on this issue mandates that <u>Scott</u> and its progeny be overruled to the extent that those cases stand for the proposition that a prescriptive easement may be established by merely showing the long, continued unexplained use of a road or trail for the statutory period; to the extent that those cases stand for the proposition that a presumption of claim of right and adverse use arises from long, continued "unexplained" use; and to the extent that such presumption negates an easement claimant's

17

burden of proving the elements of prescription.

While a presumption of adverse use or adversity arises <u>once</u> <u>the claimant establishes open, notorious, exclusive, continuous,</u> <u>and uninterrupted (unmolested) use for the full statutory period</u>, (see <u>Glantz</u>, 212 P. at 860, and <u>Rappold</u>, 849 P.2d at 1020), it remains the burden of the easement claimant to prove each of those remaining elements of prescription, and unless and until the claimant proves those elements under the general rule, the burden does not shift to the land owner to prove permissive use or license. <u>Rappold</u>, 849 P.2d at 1020.

As pointed out above, adverse use or adversity simply refers to the requirement that the easement must be exercised under a claim of right and not as a mere privilege or license revocable at the pleasure of the owner of the land and that such claim must be known to, and acquiesced in by the owner of the land. <u>Keebler</u>, 807 P.2d at 1356-1357. Given that definition, it logically follows that adverse use or adversity will, in most instances, be proven from the same evidence by which easement claimant establishes his open, notorious, exclusive, continuous and uninterrupted (unmolested) use of the easement for the full statutory period. Adverse use or adversity cannot, however, be presumed from the claimant's inability to prove those remaining elements of prescription; if those elements are not proven, then the presumption of adverse use or adversity never springs into existence. Adverse use or adversity will not be presumed from "unexplained" use.

In the instant case, while the District Court concluded, as an aside, that Respondents had proven the elements of adverse possession, it is also clear that the court relied heavily on our statements regarding unexplained use in <u>Scott</u> and its progeny, and that the erroneous application of that concept to the evidentiary record significantly influenced the court's decision. Under the circumstances, it is appropriate that the District Court reconsider its decision on this issue and apply the correct legal principles set forth in this opinion to the evidentiary record established at trial. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

### 3. SCOPE OF EASEMENT

In its conclusions of law, the District Court stated:

> The rights of plaintiffs, their heirs, successors, assigns and agents to use said primary road easement should be on foot, horseback, and all ordinary modern means of transportation for purposes of access to their lands, construction of residences and outbuildings, all agricultural purposes, including but not limited to timber management and logging, and hunting, fishing, camping and recreation. However, none of the parties should be prohibited from placing unlocked gates or cattleguards on their property boundaries to confine livestock.

The Appellants contend that the easement granted by the District Court was overbroad and far exceeds the character and extent of the use of the claimed easement during the prescriptive period. The Respondents answer that the evidence supports the District Court's finding as to the scope of the easement. Since we are remanding this case to the District Court for its reconsideration of whether, on application of the correct law to

19

the evidentiary record established at trial, there exists a prescriptive easement in favor of the Respondents, we decline to address the merits of this issue.

For the guidance of the District Court on remand, however, we note that if the court determines that the Respondents have met their burden of proof and have established a prescriptive easement over the lands of the Appellants, the court must then determine the appropriate scope and extent of the easement under the following rule:

> It is settled law in Montana that in acquiring a prescriptive easement, "the right of the owner of the dominant estate is governed by the character and extent of the use during the period requisite to acquire it."

Marta v. Smith (1981), 191 Mont. 179, 183, 622 P.2d 1011, 1013. (Citation omitted.) The Marta court went on to state, "[t]herefore, Martas' use of the roadway cannot exceed the use which they made of it during the prescriptive period." Marta, 622 P.2d at 1013. (Citations omitted.)

The District Court must carefully evaluate the prior use of the roadway and, applying the above stated rule, limit the scope and extent of any easement found to have been established to the use made of it during the prescriptive period.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

_____
Justice

We Concur:

_____
Chief Justice

20

John Conway Harrison

William E Hunt

Terry Trieweiler

Karla M. Gray

_____

Justices