No. 02-263

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 153

HAN FARMS, INC.,

        Plaintiff and Respondent,

   v.

BEATRICE C. MOLITOR,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Twelfth Judicial District,
                     In and for the County of Hill, Cause No. DV 01-088
                     The Honorable E. Wayne Phillips, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

           Stephen R. Brown, Jr., Bosch, Kuhr, Dugdale, Martin & Kaze, PLLP,
            Havre, Montana

       For Respondent:

           Bruce E. Swenson, Barron & Swenson, P.C., Havre, Montana

                   Submitted on Briefs:  July 31, 2002

                         Decided:   June 3, 2003

Filed:

_____
                     Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Respondent Han Farms, Inc. (Han Farms) filed an action in the Twelfth Judicial District Court, Hill County, against Appellant Beatrice C. Molitor (Molitor) to establish a prescriptive easement over a roadway which passes through real property owned by Molitor. The District Court entered judgment in favor of Han Farms. Molitor appeals. We affirm in part, reverse in part, and remand.

¶2 We address the following issues on appeal:

¶3 1. Did the District Court err in concluding that Han Farms established a prescriptive easement over Molitor's property?

¶4 2. Did the District Court err in failing to limit the scope and extent of any such prescriptive easement?

## BACKGROUND

¶5 Han Farms owns certain real property in Hill County, Montana, located in Sections 12, 13, and 14 of Township 31 North, Range 16 East, Montana Principal Meridian (M.P.M.). Han Farms has tenants, Ryan and Haven Linder (Linders), living on its property.

¶6 Molitor owns certain real property in Hill County, Montana, located at the N ½ of Section 14, Township 31 North, Range 16 East, M.P.M. On Molitor's property stands two residences, several outbuildings, corrals and fences. The Molitor property is used for agricultural purposes and two families live on the property.

¶7 Han Farms has utilized a roadway crossing Molitor's land since the Han Farms property was purchased in 1979. The road connects to Bullhook Road, a Hill County public

road. The road across Molitor's land was used by Han Farms to access Han Farms for residential and agricultural purposes. Han Farms' predecessor in interest used the road for the same purposes.

¶8 According to Molitor, the use of the road has increased substantially since the Linders moved onto the Han Farms property. The Linders apparently have had several recreational invitees who use the road to get to Han Farms. Molitor gave Han Farms notice that she intended to withdraw permission to use the road, which prompted Han Farms to file this action, asking the District Court to find Han Farms has a prescriptive easement over the road on Molitor's land. In its Findings of Fact, Conclusions of Law, and Judgment, dated March 19, 2002, the District Court found in favor of Han Farms, concluding Han Farms does have a prescriptive easement over Molitor's road.

STANDARD OF REVIEW

¶9 We review a district court's findings of fact to determine whether they are clearly erroneous, giving "due regard . . . to the opportunity of the trial court to judge of the credibility of the witnesses." Rule 52(a), M.R.Civ.P. In determining whether a court's findings of fact are clearly erroneous, we apply a three-part test. First, the Court will review the record to see if the findings are supported by substantial evidence. *Rettig v. Kallevig* (1997), 282 Mont. 189, 193, 936 P.2d 807, 809. Second, if the findings are supported by substantial evidence we will determine if the trial court has misapprehended the effect of evidence. *Rettig*, 282 Mont. at 193, 936 P.2d at 809. Third, if substantial evidence exists and the effect of evidence has not been misapprehended, the Court may still find that a

3

finding is clearly erroneous when, although there is evidence to support it, a review of the record leaves the Court with the definite and firm conviction that a mistake has been committed. *Rettig*, 282 Mont. at 193, 936 P.2d at 809.

¶10 We review conclusions of law to determine whether the district court's interpretation of the law is correct. *Rettig*, 282 Mont. at 193, 936 P.2d at 809. It is within the province of the trier of fact to weigh the evidence and assess the credibility of witnesses and we will not second-guess those determinations. *Rettig*, 282 Mont. at 193, 936 P.2d at 809. Moreover, we will uphold a district court's findings when there is substantial evidence to support them even when there is also evidence supporting contrary findings. *Rettig*, 282 Mont. at 193, 936 P.2d at 809.

## DISCUSSION

## ISSUE ONE

¶11 Did the District Court err in concluding that Han Farms established a prescriptive easement over Molitor's property?

¶12 A prescriptive easement is created by operation of law in Montana. *Rettig,* 282 Mont. at 193, 936 P.2d at 810. The party claiming the easement must establish open, notorious, exclusive, adverse, continuous and uninterrupted use of the claimed easement for the statutory five-year period. *Rettig*, 282 Mont. at 193, 936 P.2d at 810. However, because the theory of prescription is based on adverse use, a landowner may rebut a prescriptive easement claim by establishing that the use of the claimed easement was permissive. *Rettig*, 282 Mont. at 193, 936 P.2d at 810.

4

¶13     That Han Farms' use of the road was open, notorious, exclusive, continuous and uninterrupted is not disputed. In dispute is whether Han Farms' use was hostile, or whether Molitor granted permission for use of the road. The District Court concluded that use of the road was not permissive, and a prescriptive easement over the road had been established. Molitor claims the use was permissive, and therefore a prescriptive easement cannot exist.

¶14     At trial, Molitor testified that her predecessor in interest had given permission to Han Farms' predecessor in interest, to use the road. Molitor relies on the rule that if use of a road begins as a permissive use, it cannot ripen into a prescriptive right, no matter how long it may continue, unless there is a distinct and positive assertion of a right hostile to the owner, citing *Morrison v. Higbee* (1983), 204 Mont. 515, 520, 668 P.2d 1025, 1027. However, the facts of *Morrison* are distinguishable from the facts of the present case. In *Morrison*, the record contained ample evidence that use of the road in dispute was permissive. For example, in *Morrison* the dominant land owner asked permission of the servient land owner to use the road at issue. Permission was granted, but was revoked years later. The parties then signed a license agreement for use of the road which stated that permission could be revoked at any time. *Morrison*, 204 Mont. at 520, 668 P.2d at 1027. Here, no such evidence exists. Furthermore, even if Molitor's predecessor in interest had given permission to Han Farms' predecessor in interest to use the road, it would make no difference. Permissive use is not transferable. *Rettig*, 282 Mont. at 195, 189 P.2d at 811.

¶15     Molitor also relies on *Rettig* to support her argument that the District Court erred in concluding that Han Farms' use of the road was not permissive. In *Rettig*, Englert and

5

DeRudder owned adjacent properties. Englert had explicit permission to use a road that ran across DeRudder's property, subject to revocation of that permission. When Englert informed DeRudder that he planned to sell his property, DeRudder told Englert to warn prospective buyers that use of the road was a privilege based on a grant of permission, not a right. Rettig eventually purchased the property from Englert. Evidence showed that when Rettig came to inspect Englert's property, prior to purchasing it, Englert informed Rettig that use of the road was permissive. After purchasing the property from Englert, Rettig used DeRudder's road. Rettig and DeRudder never had a conversation about use of road, but DeRudder often waved and smiled at Rettig as the two passed along it. DeRudder later sold his land to Kallevig, who informed Rettig that he could no longer use the road.

¶16    In *Rettig*, we stated:

> First, periodic, express grants of permission are not required to maintain the permissive character of the use of a road. If a use begins as a permissive use it is presumed to continue as such. Moreover, the relevant facts here, that the use of the road by Englert and Rettigs was essentially the same, that DeRudder did not object to either Englert's or Rettigs' use, and that DeRudder intended that use be permissive only, support a conclusion that Rettigs' use of the road was pursuant to DeRudder's implied permission.

Rettig, 282 Mont. at 197, 936 P.2d at 811 (citation omitted). We based our conclusion that use of the road was permissive, rather than hostile, in part on the fact that Englert *warned* Rettig that it was permissive. Rettig, 282 Mont. at 197, 936 P.2d at 811. However, the facts of *Rettig* are distinguishable from those of the present case. Here, the record contains no evidence that Molitor *ever* gave Han Farms permission to use the road. Thus, the rule set forth in *Rettig* regarding periodic, express grants of permission is inapplicable to the present

6

case.

¶17    Molitor also argues that Han Farms "did nothing to make a distinct and positive assertion of a right hostile to the owner, Molitor." However, the burden is not on Han Farms to show their use of the road was hostile; the burden is on Molitor to show the use was permissive. In *Wareing v. Schreckendgust* (1996), 280 Mont. 196, 209, 930 P.2d 37, 45, we stated: "After a claimant has established the elements of a prescriptive right, a presumption of adverse use arises and the burden shifts to the landowner affected by the prescriptive claim to establish that the claimant's use was permissive."

¶18    After reviewing the record, we hold that the District Court's findings of fact are supported by evidence and are not clearly erroneous, and that the court's conclusions of law are correct. Based upon the evidence before it, the District Court concluded that the use of the road was hostile rather than permissive. The District Court further determined that a prescriptive easement does exist across Molitor's road.

ISSUE TWO

¶19    Did the District Court err in failing to limit the scope and extent of any such prescriptive easement?

¶20    Molitor urges that if we find Han Farms does have a prescriptive easement across Molitor's road, as we have done, we limit the scope of said easement. Molitor cites us to § 70-17-106, MCA, which states: "The extent of a servitude is determined by the terms of the grant or the nature of the enjoyment by which it was acquired." Based upon this statute, Molitor argues that the scope of Han Farms' easement should be limited to the use during

7

the prescriptive period when the easement was acquired.

¶21    Han Farms counters that we should not respond to Molitor's scope argument because the issue is not properly before this Court. Specifically, Han Farms argues that the scope issue was not raised in the pleadings and was not mentioned in the Pretrial Order.

¶22    We addressed a similar issue in *Warnack v. Coneen Family Trust* (1994), 266 Mont. 203, 879 P.2d 715. In that case, we remanded to the District Court to determine whether a prescriptive easement existed. In doing so, we stated:

> For the guidance of the District Court on remand, however, we note that if the court determines that the Respondents have met their burden of proof and have established a prescriptive easement over the lands of the Appellants, the court must then determine the appropriate scope and extent of the easement . . . .

*Warnack*, 266 Mont. at 217, 879 P.2d at 724.

¶23    We take this opportunity to clarify that in an action in which the existence of a prescriptive easement is at issue, it is implied that the scope of the easement, if the court finds one exists, is also at issue. We base this holding on our decision in *Warnack*, as well as § 70-17-106, MCA.

¶24    Pursuant to § 70-17-106, MCA, the scope of Han Farms' easement across Molitor's property should be limited to the use during the prescriptive period when the easement was acquired. We instruct the District Court to address the scope and extent of Han Farms' easement on remand, consistent with our holding in this Opinion.

¶25    Affirmed in part, reversed in part, and remanded.

/S/ JIM REGNIER

8

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART