DA 13-0346

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2013 MT 338

BROWN AND BROWN OF MT,
INC., A Corporation,

   Plaintiff and Appellant,

  v.

KEITH RATY AND COLLEEN RATY,

   Defendant and Appellee.

APPEAL FROM:  District Court of the Twelfth Judicial District,
       In and For the County of Hill, Cause No. DV 08-190
       Honorable Daniel A. Boucher, Presiding Judge

COUNSEL OF RECORD:

   For Appellant:

     J. Devlan Geddes, Goetz, Gallik & Baldwin, P.C.; Bozeman, Montana

   For Appellee:

     Gregory J. Hatley, Davis, Hatley, Haffeman & Tighe, P.C.; Great Falls,
     Montana

         Submitted on Briefs: October 23, 2013
            Decided: November 12, 2013

Filed:

     _____
            Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     Brown & Brown of Montana, Inc. (Brown) appeals from the Order of the Montana Twelfth Judicial District Court, Hill County, modifying its final judgment to conform with our opinion in *Brown & Brown of MT, Inc. v. Raty*, 2012 MT 264, 367 Mont. 67, 289 P.3d 156 (*Brown I*).

¶2     We reverse and remand for further proceedings.

¶3     The issue on appeal is:

¶4     *Did the District Court err by failing to delineate the scope of the Ratys' residential and recreational prescriptive easements across Brown's real property?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶5     The Court previously considered this case in *Brown I*, where we reviewed the District Court's decision granting summary judgment to the Ratys. The District Court's decision, as modified, provided generally that: (1) the Ratys had a prescriptive easement to cross Brown's land; (2) the prescriptive easement included residential and recreational uses; and (3) the width of the easement was confined to twenty feet. The record before the District Court included sworn affidavits, deposition testimony, and photographs attesting to historic and present-day use of the easement. The uses included trailing herds of livestock, horseback riding, walking, driving agricultural and construction equipment, hauling materials to repair or build fences, spraying weeds, maintaining and developing water sources, hauling firewood, riding snowmobiles, accessing residences, hunting, and fishing. We held that the District Court properly found that the Ratys had a prescriptive easement

2

that included these uses, but improperly limited the width of the easement to twenty feet for the purposes of trailing cattle. We remanded the case to the District Court to clarify the scope of recreational and residential uses authorized by the easement; and to modify its order regarding the easement's width.

¶6 The District Court's pertinent language as to the scope of use included in the easement originally read:

> The permitted uses of the Raty's prescriptive easement are as follows:
> a. Trailing cattle and engaging in other travel necessary for the maintenance of the cattle and the property on which the cattle are placed;
> b. Residential uses associated with the cabin/residence maintained on the Upper Setty Ranch; and
> c. Recreational uses associated with the cabin/residence located on the Upper Setty Ranch.

¶7 The District Court amended this language to read:

> The permitted uses of the Raty's prescriptive easement are as follows:
> a. Trailing cattle and engaging in other travel necessary for the maintenance of the cattle and the property on which the cattle are placed;
> b. Residential uses associated with the cabin/residence maintained on the Upper Setty Ranch, limited to those historical uses established during the prescriptive period; and
> c. Recreational uses associated with the cabin/residence located on the Upper Setty Ranch, limited to those historical uses established during the prescriptive period.

## STANDARD OF REVIEW

3

¶8 Whether the District Court has complied with the remand instructions is a question of law, which we review for correctness. *Watson v. West*, 2011 MT 57, ¶ 13, 360 Mont. 9, 250 P.3d 845; *see In re Marriage of Pfeifer*, 1998 MT 228, ¶ 9, 291 Mont. 23, 965 P.2d 895.

## DISCUSSION

¶9 *Did the District Court err by failing to delineate the scope of the Ratys' residential and recreational prescriptive easements across Brown's real property?*

¶10 On remand, a district court must proceed in conformity with the views expressed by the appellate court. *See Haines Pipeline Constr. v. Mont. Power Co.*, 265 Mont. 282, 290, 876 P.2d 632, 637 (1994). Trial court proceedings on remand should comport with the mandate and the result contemplated by the appellate court's opinion. 5 Am. Jur. 2d *Appellate Review* § 734 (2013).

¶11 When we remanded this case to the District Court in *Brown I*, we did so, in part, to "alleviate Brown's concern that the District Court has granted the Ratys unlimited use of the road for residential and recreational uses[.]" *Brown I*, ¶ 35. Brown argues that "[t]he Modified Judgment leaves Brown, and future owners of the subject properties, uncertain as to what uses the Ratys may make of their residential and recreational prescriptive easements across Brown's property because the character and frequency of the 'historical uses' were not defined by the District Court." For instance, Brown pontificates:

> Imagine twenty years from now the Ratys' successors in interest tear down the existing homestead cabin on the Upper Setty Ranch and construct a multi-bedroom private residence with outbuildings. May the Ratys' successors access their new home using the prescriptive easement under the Modified Judgment? Further imagine the Ratys' successors in interest invite ten of their

4

friends for a week of hunting on the Upper Setty Ranch. May the friends use the prescriptive easement to access the Upper Setty Ranch? What if it is twenty friends? What if they are going to spend the week riding dirt bikes and ATVs? . . . May the Ratys' successors [grade, gravel or pave the two-track road within the easement]?

We agree that the District Court's revision to its judgment did little to address Brown's concerns. While the added language "limited to those historical uses established during the prescriptive period," is an accurate statement of what the law requires, it does not adequately define the scope of use encompassed in the Ratys' prescriptive easement.

¶12    In *Brown I*, we set forth the principles of law governing prescriptive easements. "The extent of a servitude is determined by the terms of the grant or the nature of the enjoyment by which it was acquired." Section 70-17-106, MCA. We explained that "[t]he right to use an easement acquired by prescription cannot exceed the use which was made during the prescriptive period." *Brown I*, ¶ 31 (citing *Kelly v. Wallace*, 1998 MT 307, ¶ 37, 292 Mont. 129, 972 P.2d 1117; *Ruana v. Grigonis*, 275 Mont. 441, 454, 913 P.2d 1247, 1255 (1996)); *see also* Jon W. Bruce & James W. Ely, Jr., *The Law of Easements and Licenses in Land* § 7:12, 7-29 (Thomson Reuters 2013). Where an easement is not specifically defined, its scope extends only to uses "reasonably necessary and convenient" for the purpose for which it was created. *Brown I*, ¶ 31 (citing *Clark v. Heirs & Devisees of Dwyer*, 2007 MT 237, ¶ 27, 339 Mont. 197, 170 P.3d 927; *Leffingwell Ranch, Inc. v. Cieri*, 276 Mont. 421, 430, 916 P.2d 751, 757 (1996); *Strahan v. Bush*, 237 Mont. 265, 268, 773 P.2d 718, 720 (1989)). For instance, in *Ferguson v. Standley*, 89 Mont. 489, 502, 300 P. 245, 250 (1931) (overruled on other grounds by *In re Estate of Dolezilek*, 156 Mont. 224, 478 P.2d 278 (1970)), this Court

held that where the plaintiff had obtained a prescriptive right to use a road, the right—while confined to historic uses—"of course" included "the right to make necessary repairs on the road [he historically used] and, for that purpose, to use so much of defendant's land as is necessary."

¶13 We have rejected an "evolutionary" approach to defining private prescriptive easements that would allow greater use of the easement over time. *Kelly*, ¶ 37 (citing *Warnack v. Coneen Fam. Trust*, 278 Mont. 80, 86, 923 P.2d 1087, 1091 (1996)). Rather, "[t]he right of the owner of the dominant estate is governed by the character and extent of the use during the period requisite to acquire it." *Ferguson*, 89 Mont. at 502, 300 P. at 250 (citing *Chessman v. Hale*, 31 Mont. 577, 79 P. 254 (1905)). In *Kelly* we held that "the frequency of use by which owners of an easement by prescription acquired their easement during the prescriptive period may limit the frequency of future use[.]" *Kelly*, ¶ 34. The character of future use is also limited to the type of use during the prescriptive period. *See Wareing v. Schreckendgust*, 280 Mont. 196, 213, 930 P.2d 37, 48 (1997) (where the Wareings had maintained a ditch by shovel and hand cleaning throughout the prescriptive period, future maintenance was limited to shovel and hand cleaning); *Warnack*, 278 Mont. at 86, 923 P.2d at 1091 (affirming the district court's decision limiting the scope of a prescriptive easement's use to the use by which it had been acquired). The specific language the district court in *Warnack* used to limit the scope of a prescriptive easement is instructive:

> The right of the Plaintiffs [Warnack], heirs, successors, assigns and agents to use the primary road easement should be on foot, horseback, and all ordinary modern means of transportation for purpose of access to their lands,

6

construction of a residence and outbuildings as necessary, all for agricultural purposes. Additionally, Plaintiffs have a right to access their property for hunting, fishing, camping and recreation. It is the conclusion of the Court that the easement is governed by the character and extent of its use during the period requisite to acquire it and that the easement can not [*sic*] exceed the use which Plaintiffs and their predecessors made of it during the prescriptive period. This grants Plaintiffs an absolute right to access their property over the primary easement for all agricultural purposes, as well as hunting and fishing recreational purposes. It does not grant an easement for purposes of logging, mineral extraction or exploration, or subdividing of the real property. Such uses of the prescriptive easement would increase the burden on the servient landowners. None of the parties are hereby prohibited from placing gates or cattle guards on their respective properties but if locks are placed on gates, keys or combinations, as necessary, shall be provided to Plaintiffs and their agents.

*Warnack*, 278 Mont. at 85-86, 923 P.2d at 1090-91.

¶14    We conclude that the District Court did not comply with the mandate and the result contemplated by this Court in *Brown I*.  The District Court's judgment need not catalogue a litany of specific activities each party may undertake, as Brown appears to request, but it should at least provide the level of guidance this Court endorsed in *Warnack*.

### CONCLUSION

¶15    We again remand this matter to the District Court to modify its order to better define the character and frequency of historic recreational and residential use.  It appears to this Court that the factual record before the District Court should be sufficient for the District Court to render an opinion defining the scope of permissible recreational and residential use.  In the court's discretion, however, it may conduct such additional fact-finding as it deems necessary to better describe the character and frequency of recreational and residential use associated with the easement.

7

¶16     Reversed and remanded for further proceedings consistent with this Opinion.


                                        /S/ MICHAEL E WHEAT

We Concur:


/S/ MIKE McGRATH
/S/ BRIAN MORRIS
/S/ PATRICIA COTTER
/S/ JIM RICE